STATE OF NORTH CAROLINA v. STEFAN MICHAEL CAMPBELL

No. 4

(Filed 4 January 1979)

**Criminal Law § 79.1— disposition of charges against codefendant—objections properly sustained—no prejudice**

The rule that neither a conviction, nor a guilty plea, nor a plea of *nolo contendere* by one defendant is competent as evidence of the guilt of a codefendant on the same charges was not violated in this case where the court sustained the objection of defendant to every question asked by the prosecutor with regard to the disposition of the charges against his codefendant, and defendant did not request the court to instruct the jury to disregard the questions; furthermore, defendant's failure to object to testimony by the codefendant which was identical to evidence which the district attorney had sought to elicit concerning the charges against the codefendant amounted to a waiver of his objections to such evidence.

Justice BROCK took no part in the consideration or decision of this case.

APPEAL by defendant from *Clark, J.*, at the 14 November 1977 Criminal Session of CUMBERLAND Superior Court.

Defendant was tried upon indictments, proper in form, which charged him with assault with a deadly weapon with intent to kill inflicting serious injury, crime against nature, armed robbery, kidnapping, and first-degree rape. Mrs. Marsha Pittman was the alleged victim and all of the offenses allegedly took place on the same day.

Evidence for the state, including the testimony of Danny Mincey, tended to show:

On the day in question Mrs. Pittman was walking to a bus stop in Hope Mills, N. C., where she intended to take a bus to Fayetteville to keep an appointment at a bank. Defendant and Danny Mincey rode by her in a borrowed car, stopped and offered her a ride. She accepted, thinking they would take her only as far as Hope Mills. After getting into the car, she engaged in conversation with defendant and Mincey. Finding that she intended to go to Fayetteville, defendant, who was driving, told her that he and Mincey would drive her there.

En route to Fayetteville on Interstate 95, defendant stopped at a service station to buy gas. Mrs. Pittman and the two men got out of the car and she bought soft drinks for all of them. When they resumed the trip, Mincey told defendant that he did not feel well and that he wanted to go home. Defendant continued driving on Interstate 95 for some distance and finally exited on a rural paved road. Telling prosecutrix that he was taking Mincey home, defendant continued along this rural road until the pavement ended. He then proceeded on a dirt road at a high rate of speed for several minutes. Finally, in an isolated spot, defendant stopped the car and pointed out a barely visible house as being Mincey's home. However, he said that he and Mincey were going to water some marijuana plants before going to the house. Defendant then restarted the automobile, turned around, drove back the way they had come and turned off of the dirt road onto a path leading into a field between some trees. He drove about 150 yards off of the dirt road before stopping the car.

State v. Campbell

When the car stopped this time, defendant and Mincey got out and walked about 100 yards farther into the woods. Prosecutrix, who had by this time become frightened, stayed in the car until the two men were out of sight and then got out of the car to look for a house or other place to which she could run. Seeing no such place, she went to the rear of the automobile to obtain its license number.

At this point Mincey and defendant returned. Defendant, who had a knife in his hand, grabbed prosecutrix by the arm and began pulling her toward the woods. Prosecutrix screamed and struggled; she told the men that she was pregnant and that she had seen the license number on the car. Defendant told her to "shut up" and slapped her on the face. He then dragged her into the woods out of sight of the car where he forced her to undress and then undressed himself. Meanwhile, Mincey had returned to the car. Defendant forced prosecutrix to perform oral sex on him and then forcibly had intercourse with her. He then called Mincey from the car and ordered him to have intercourse with prosecutrix. Defendant walked back to the car while Mincey pretended to have intercourse with Mrs. Pittman. Minutes later, defendant returned carrying a machete. After allowing prosecutrix to smoke a cigarette which he said would be her "last one" defendant forced Mincey to undress again and then ordered prosecutrix to perform oral sex on Mincey.

As defendant watched, prosecutrix began performing oral sex on Mincey. While doing so, she was struck in the back with the machete. Prosecutrix did not see who stuck the machete in her; she did hear defendant order Mincey to remove it from her back. Mincey refused and defendant began kicking prosecutrix to roll her over. When he had rolled her over, he pulled the knife out and Mincey then stabbed her under her left breast.

Defendant said he was sick on his stomach and grabbed prosecutrix's pocketbook and ran to the car with Mincey following him. Prosecutrix then heard defendant order Mincey to return and "finish her off". Mincey came back, told her he was not going to hurt her further and told her to scream as though he had stabbed her again. As she screamed, he wiped the knife across her back so that it would be covered with blood and returned to the car where defendant had waited. Unsatisfied that prosecutrix was

dead, defendant again ordered Mincey to finish killing her. Mincey went back into the woods to where prosecutrix lay partially paralyzed and pretended to stab her again. She begged him not to leave her to bleed to death, but he went back to the car and left with defendant. Prosecutrix waited a few minutes and then crawled to the dirt road where she was found by a man in a passing truck.

Evidence for defendant, including his own testimony, tended to show: He and Mincey saw the prosecutrix hitchhiking and offered her a ride. She told them she was going to Fayetteville and they agreed to take her there. Along the way, they stopped for gas and she bought all of them soft drinks. They invited her to go swimming in a rock quarry, and she agreed to go. When they reached the quarry, defendant and Mincey walked into nearby woods to water some marijuana plants growing there. When they returned to the car, defendant asked prosecutrix to go into the wooded area with him and she voluntarily did so. With her consent, defendant had intercourse with her. She also performed oral sex on him. Mincey, who had been at the car, walked up and insisted on having intercourse with the girl. She agreed. Defendant then went to the car and waited ten or twenty minutes. When he returned to where Mincey and prosecutrix were, prosecutrix again performed oral sex on defendant. Mincey and prosecutrix then argued over whether she would perform oral sex on him a second time. She refused and threatened to go to the police. Mincey became enraged and stabbed her in the back several times. Defendant panicked, ran to the car and did not see the prosecutrix again.

The jury found defendant guilty on all counts with which he was charged. From judgments imposed on the verdicts, he appealed. His motions to bypass the Court of Appeals on the charges of crime against nature and assault with a deadly weapon with intent to kill were allowed.

*Attorney General Rufus L. Edmisten, by Associate Attorney Tiare Smiley Farris, and Special Deputy Attorney General David S. Crump, for the State.*

*Charles H. Burgardt for defendant appellant.*

BRITT, Justice.

Defendant has brought forward a single assignment of error. By it he contends that the court erroneously allowed the district attorney to introduce evidence of codefendant Mincey's guilty plea and sentence. We find no merit in this assignment.

Defendant testified that Mincey stabbed the prosecutrix after both men had intercourse with her. He also testified that Mincey had made a "deal" with the district attorney and obtained a lighter sentence in exchange for his testimony against defendant. On cross-examination of defendant the following exchange took place:

"I don't know which detective Danny Mincey talked to. I know he talked to the police when he got locked up. I don't know what Danny told them. He did tell me that he had a deal with you that if he convicted me that you would cut his time. I know that some time ago Danny Mincey was tried in this courtroom. It was during the week of October 24, 1977. I know that Danny Mincey was convicted.

"Q. But he was convicted of aggravated kidnapping, wasn't he?

"MR. BURGARDT: Objection your Honor.

"COURT: Sustained.

"Q. You know that he was convicted of assault with the intent to commit rape?

"MR. BURGARDT: Objection your Honor.

"COURT: Sustained.

"Q. Now, —

"A. I also know, Mr. Gregory, I also know that each time that I did see him like in the chapel, he brung up the fact that he wasn't given no time because he made a deal with you. That's exactly what he said to me.

"Q. He got seventy years, didn't he —

"MR. BURGARDT: Objection your Honor.

"COURT: Sustained."

The clear rule is that neither a conviction, nor a guilty plea, nor a plea of *nolo contendere* by one defendant is competent as evidence of the guilt of a codefendant on the same charges. A defendant's guilt must be determined solely on the basis of the evidence presented against him, and it is improper to make reference to the disposition of charges against a codefendant. *State v. Jackson,* 270 N.C. 773, 155 S.E. 2d 236 (1967); *State v. Kerley,* 246 N.C. 157, 97 S.E. 2d 876 (1957).

This rule has not been violated in the case *sub judice.* The court sustained the objection of defendant to every question asked by the prosecutor with regard to the disposition of the charges against his codefendant. There is no answer in the record which reveals the answer the witness would have given if he had been allowed to respond. Ordinarily, the asking of the question alone will not result in prejudice to the defendant. *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512 (1970); *State v. Butler,* 269 N.C. 483, 153 S.E. 2d 70 (1967); *State v. Williams,* 255 N.C. 82, 120 S.E. 2d 442 (1961); *State v. Hoover,* 252 N.C. 133, 113 S.E. 2d 281 (1960). In this case there was no evidence admitted *over objection* relative to the disposition of the charges against the codefendant stemming from the incidents in question. We also note that defendant did not request the court to instruct the jury to disregard the questions.

Furthermore, even had the trial judge admitted the evidence which the prosecutor sought to elicit in his cross-examination, we would be compelled to find that, on the record in this case, there was no prejudice to defendant. The State on rebuttal, and without objection by defendant, offered the testimony of Danny Mincey who stated that he had been convicted of kidnapping, assault with a deadly weapon, common law robbery, and assault with intent to commit rape. He further testified that he had been sentenced to seventy years imprisonment in connection with these charges. This is the same evidence which the solicitor sought to introduce by cross-examination of defendant. It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character. *State v. Owens,* 277 N.C. 697, 178 S.E. 2d 442 (1971); *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968); 1 Stansbury's North Carolina Evidence § 30, p. 79 (Brandis Rev., 1973).

In defendant's trial and the judgments entered, we find

No error.

Justice BROCK took no part in the consideration or decision of this case.