[Nos. 24551-5-II; 24558-2-II. Division Two. December 15, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. SHAWN EARL JAMES, *Appellant*.

28

*Manek R. Mistry* (of *Backlund & Mistry*), for appellant (appointed counsel for appeal).

*Jeremy Randolph, Prosecuting Attorney*, and *Ruth E. Ammons, Deputy*, for respondent.

BRIDGEWATER, J. — Shawn Earl James appeals two separate criminal convictions, one for bail jumping[1] from a jury trial, and one for unlawful possession of a firearm[2] from a bench trial, alleging errors in admission of evidence. At oral

---

[1] RCW 9A.76.170(2).

[2] RCW 9.41.040(1)(a).

argument, however, James conceded that there were no errors in his conviction of unlawful possession of a firearm; thus, we do not discuss any alleged errors regarding that conviction.[3] We affirm both convictions.

The State charged James with unlawful possession of a firearm (UPF) based on events that took place in August 1997. James failed to appear in court on October 9, 1997, the date for his omnibus hearing on the UPF charge. That same day, the State filed a motion requesting the court issue a bench warrant because of James's failure to appear. Later that same day, the court ordered the bench warrant for James's arrest. The State charged James with bail jumping.

At the jury trial for the bail jumping charge,[4] the State offered nine documentary exhibits contained in James's court file. Specifically, the State offered its Motion and Declaration for Order Directing Issuance of a Bench Warrant, containing a declaration by the prosecuting attorney that James failed to appear at his scheduled court date and concluding that a warrant should issue. The State also offered the judge's Order for Bench Warrant and the warrant itself. Additionally, the State offered the Notice of Trial Setting, signed by James, which indicated the date for James's omnibus hearing and trial date for the UPF charge. The State also offered two Orders Setting Conditions of Release related to the UPF charge. These documents included the following language above the signature line:

> I UNDERSTAND THAT HAVING BEEN RELEASED BY THE COURT or admitted to bail, I am required to reappear as ordered and that my failure to appear as required constitutes the crime of Bail Jumping. (RCW 9A.76.170.)

2 Clerk's Papers (Exs. 2 & 4). James signed both documents.

---

[3] Lewis County Superior Court Cause No. 97-1-00511-1; Court of Appeals, Division Two, Cause No. 24551-5-II.

[4] The UPF and bail jumping cases were initially consolidated, but the court severed the cases the day of the joint trial because the State's key witness on the UPF charge had a family emergency.

James objected to the admission of all these documents based on hearsay and the corpus delicti rule. The court admitted all of these exhibits, finding that the Motion and Declaration for Order Directing Issuance of a Bench Warrant established the corpus delicti of bail jumping because it presented independent evidence that James knowingly failed to appear in court. In addition, the trial court overruled James's hearsay objections to the documents, reasoning that the documents qualified for the court document exception found in RCW 5.44.010.

The State also introduced a copy of the clerk's minutes for October 9, 1997, noting that James failed to appear (FTA) in court for his omnibus hearing. And the State offered the testimony of a Lewis County Superior Court clerk who explained how court clerks take minutes. James did not testify, nor present additional evidence. The jury returned a guilty verdict.

## I. COURT DOCUMENTS HEARSAY EXCEPTION

James first argues that State's motion and declaration regarding his failure to appear admitted at the bail jumping trial violated his constitutional right to confront witnesses because they contained inadmissible hearsay. James specifically argues that the State's motion did not fall squarely within the court records hearsay exception of RCW 5.44.010[5] and, thus, it was improperly admitted. We agree that the motion contained inadmissible hearsay, but we find that any error in its admission was harmless.

 The prosecutor's declaration contained within the motion is hearsay because it is a written out of court statement offered to prove the truth of the matter asserted as substantive evidence of James's guilt. ER 801(c); *Viereck v. Fibreboard Corp.*, 81 Wn. App. 579, 589, 915 P.2d 581,

---

[5] RCW 5.44.010 provides: "The records and proceedings of any court of the United States, or any state or territory, shall be admissible in evidence in all cases in this state when duly certified by the attestation of the clerk, prothonotary or other officer having charge of the records of such court, with the seal of such court annexed."

*review denied*, 130 Wn.2d 1009 (1996) (holding that defendant's declaration regarding his reasons for not signing his deposition was hearsay). Both the Sixth Amendment to the United States Constitution and Article I, Section 22 of the Washington State Constitution guarantee a defendant the right to confront witnesses. *State v. Monson*, 113 Wn.2d 833, 840, 784 P.2d 485 (1989); *State v. Connie J.C.*, 86 Wn. App. 453, 456, 937 P.2d 1116 (1997). The opportunity to cross-examine witnesses is key to the confrontation right. *Monson*, 113 Wn.2d at 840. Where the witness is unavailable to testify, admission of an out of court hearsay statement may violate this right. *Monson*, 113 Wn.2d at 840.

But a hearsay statement does not violate the confrontation clause if the declarant is unavailable and the statement bears adequate indicia of reliability. *Monson*, 113 Wn.2d at 840-41; *Connie J.C.*, 86 Wn. App. at 456. Moreover, the confrontation clause does not require that a court inquire into independent indicia of reliability if the document is admissible under a "firmly rooted" hearsay exception. *Monson*, 113 Wn.2d at 843 (citing *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)). James concedes that the court records exception of RCW 5.44.010 qualifies as a "firmly rooted" hearsay exception. And James agreed at oral argument that the following documents were properly admissible under this exception:

(1) Order Setting Conditions of Release dated August 22, 1997, with a signature of Shawn James, and with the signature of Judge John Hall that ordered James's return to court "As Directed & on 8-28-97"[;] 2 Clerk's Papers (Ex. 2);

(2) Order Setting Conditions of Release dated August, 28, 1997, with a signature of Shawn James, and with the signature of Judge John Hall that ordered James's return to court "As Directed & on 10-9-97"; *Id.* (Ex. 4);

(3) Notice of Trial Setting dated August 28, 1997, containing an Omnibus Hearing date set for 10-9-97, and a statement in bold as follows:

**THE DEFENDANT SHALL APPEAR FOR ALL OF THE ABOVE SCHEDULED COURT HEARINGS. Failure to**

**appear by the defendant is a crime, and may result in a bench warrant being issued authorizing the arrest of the defendant.** *Id.* (Ex. 3);

(4) Order for Bench Warrant (FTA) directing the Clerk of the Court to issue a bench warrant for the defendant (Shawn Earl James) "has failed to appear as ordered in the above-entitled cause[,]" signed by Judge John Hall on October 9, 1997. 3 Clerk's Papers (Ex. 7).

James argues, however, that the State's Motion and Declaration for Order Directing Issuance of a Bench Warrant does not fall within the court records exception.

■ Both James and the State argue that this court should look to cases concerning public records in order to determine the admissibility of court documents. Public records, when duly certified, may be admitted in evidence in the courts of this state. RCW 5.44.040; ER 803(a)(8). The public records exception is a "firmly rooted" exception to the hearsay rule long recognized in our state. *Steel v. Johnson*, 9 Wn.2d 347, 358, 115 P.2d 145 (1941); *Monson*, 113 Wn.2d at 843. Not all public documents meeting the literal requirements of the public records exception are admissible. To be admissible, the public document must: (1) contain facts rather than conclusions that involve independent judgment, discretion, or the expression of opinion; (2) relate to facts that are of a public nature; (3) be retained for public benefit; and (4) be authorized by statute. *Monson*, 113 Wn.2d at 839 (citing *Steel*, 9 Wn.2d at 358).

James urges this court to apply the first prong of this test to court documents and to examine the Motion and Declaration within this context. He argues that by applying this independent judgment test, this court must find that the prosecutor's declaration is a conclusion involving independent judgment that addresses essential elements of the charge and, therefore, should have been excluded as inadmissible hearsay. No Washington case has directly examined whether the public record hearsay rule applies equally to court records.

We first note that the admissibility requirement of RCW

5.44.010 is similar to the public records rule, RCW 5.44.040. And although the rules within chapter 5.44 RCW appear facially as only rules of authenticity, our Supreme Court has specifically held that RCW 5.44.040 codifies the common law public records exception to the hearsay rule. *Monson*, 113 Wn.2d at 838. Additionally, one older Washington case specifically treated RCW 5.44.010 as a hearsay exception comparable to the public records exception when examining whether a trial judge could rely on clerk's minutes contained in a court file. *State v. Scriver*, 20 Wn. App. 388, 399 n.1, 580 P.2d 265 (1978), *review denied*, 91 Wn.2d 1011 (1979) (citations omitted). Second, although court documents are not specifically cross-referenced in Washington ER 803(a)(8) as is RCW 5.44.040, court records likely fall within the broad category of "public records."[6] Furthermore, federal cases have held that court records were properly admitted under the public records hearsay exception. *See e.g., Olsen v. Correiro*, 189 F.3d 52, 63 (1st Cir. 1999); *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999); *United States v. Lechuga*, 975 F.2d 397, 399 (7th Cir. 1992); *Maynard v. Dixon*, 943 F.2d 407, 414 (4th Cir. 1991). Therefore, the rule governing admissibility of public records applies to court records. Consequently, court documents authenticated under RCW 5.44.010 fall within the public records "firmly rooted" hearsay exception if they meet the public records independent judgment test. We hold that in order for court documents containing hearsay to be admitted, court records must not only comply with RCW 5.44.010, but must also contain facts rather than conclusions involving discretion or expression of opinion.

■■ Applying public records analysis to this case, we hold that the prosecutor's declaration does not meet the requirements of the hearsay exception. First, by requesting that a warrant for a failure to appear should issue, the declaration contains the prosecutor's own legal conclusion based upon facts that the prosecutor asserts to be true.

---

[6] The Washington evidence rules specifically allow courts to interpret the existing hearsay exceptions broadly. ER 803 cmt. Section (b).

Second, the prosecutor made the declaration in his capacity as an advocate, not as a neutral public official. With all public records, trustworthiness exists because of the declarant's official duty and high probability that the declarant has performed his public duty to make an accurate record. *Monson*, 113 Wn.2d at 845 (citing EDWARD W. CLEARY, McCORMICK ON EVIDENCE § 315, at 889 (3d ed. 1984)). Here, the prosecutor is fulfilling his public duty to advocate the State's case against an individual, not to act as a neutral public record keeper.

Third, the declaration contains the prosecutor's assertions of fact, which the State introduced for their truth in order to prove elements of the charged crime. The declaration is not an example of a routine court transaction where cross-examination would serve little or no purpose, or where a records custodian would not likely recall the details of a particular event—two rationales that underlie the public records exception. *Monson*, 113 Wn.2d at 845; *State v. Hines*, 87 Wn. App. 98, 101, 941 P.2d 9 (1997). Cross-examination would permit James to test the truth of the State's assertions regarding his knowledge of his future court dates and failure to appear. In sum, the prosecutor's declaration is not the type of routine court record, made and maintained in the public capacity, that merely contains facts placing it within the exception. Consequently, the prosecutor's declaration was improperly admitted.

Nevertheless, any error in admission of the Motion and Declaration for Order Directing Issuance of a Bench Warrant was harmless. "We find a constitutional error harmless only if convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (citation omitted). To prove that James failed to appear at the October date, the State also admitted the clerk's minutes which noted his failure to appear. Second, the August 28, 1997 order setting James's conditions for release and the accompanying notice

of trial setting each showed that James was present when the court told him to appear on October 9, 1997. Further, the Order for Bench Warrant plainly states that James failed to appear as ordered on October 9, 1997. Therefore, we hold that the admission of the motion and declaration offered to prove James knowledge and failure to appear was harmless.

## II. CORPUS DELICTI

 James next raises corpus delicti challenges to the admission of each Order Setting Conditions of Release and the Notice of Trial Setting. "The corpus delicti rule prohibits the admission of a confession absent prima facie evidence that a crime has been committed." *State v. Finch*, 137 Wn.2d 792, 838, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999); *State v. Aten*, 130 Wn.2d 640, 657, 927 P.2d 210 (1996). The purpose of the rule is to prevent an individual from a conviction based upon a confession to a crime that no one has committed. *Finch*, 137 Wn.2d at 838. And the rule would be frustrated if the court allowed a false confession to be " 'corroborated' by a false admission, or even by seemingly innocent statements." *Aten*, 130 Wn.2d at 657-58. Therefore the State must establish the corpus delicti of the charged crime through independent proof before the confession or admission can be used to prove a defendant's guilt at trial. *Aten*, 130 Wn.2d at 656.

Because the State's burden is one of production and not of persuasion, "[t]he independent evidence need not be sufficient to support a conviction or even to send the case to the jury." *City of Bremerton v. Corbett*, 106 Wn.2d 569, 578, 723 P.2d 1135 (1986); *Aten*, 130 Wn.2d at 656. "It is sufficient if [the independent proof] prima facie establishes the corpus deliciti." *Aten*, 130 Wn.2d at 656 (emphasis omitted). "Prima facie" in this context means there exists evidence of sufficient circumstances that would support a logical and reasonable inference of the facts sought to be proved. *Aten*, 130 Wn.2d at 656. In assessing whether there is sufficient

evidence of the corpus delicti, this court engages in the same inquiry as the trial court and assumes the truth of the State's evidence and all reasonable inferences from it in a light most favorable to State. *State v. Pineda*, 99 Wn. App. 65, 78, 992 P.2d 525 (2000).

James argues that his signature on the two orders setting his conditions of release and the Notice of Trial Setting constitute confessions or inculpatory statements for which the State must provide independent evidence of the corpus delicti of bail jumping before their admission. James argues that because these three documents were the primary evidence presented to prove James's knowledge of his subsequent court date, they could not be admitted until the State established the corpus delicti of bail jumping. The State argues that James's signature on the two orders setting condition of release and the notice of trial setting do not qualify as "statements" that must meet the requirements of corpus delicti. We agree with the State.

For the purpose of the corpus delicti of bail jumping both parties have assumed the rule must be met by assuming that James's signature is an adoptive admission of the language on the documents—i.e., that he had read and agreed to follow the conditions of release, promised to appear when the court ordered, and acknowledged the criminal consequences of failing to appear. We do not reach the contention that these are statements that have been adopted by the defendant for the purposes of corpus delicti. The elements of bail jumping are set forth in RCW 9A.76.170(1) as follows:

> Any person having been released by court order or admitted to bail with the requirement of a subsequent personal appearance before any court of this state, and who knowingly fails to appear as required is guilty of bail jumping.

The corpus delicti includes: (1) being released from custody by a court order; and (2) failing to appear. For the purposes of corpus delicti, it is not necessary that the evidence

conclusively establish all elements of the offense, but there must be an inference that the failure to appear was knowing. Even then, the inference need not be sufficient to support a conviction or send the case to the jury. It is sufficient in this case that the signature of Shawn Earl James appears on the documents. That signature merely shows that he was present when the court ordered him to appear. We can draw an inference that he knew he was ordered to appear and understood it.

Thus, the same documents that we addressed earlier also support the corpus delicti (e.g., the August 28 Order that plainly directs James to appear on October 9, 1997). Without referring to any of the language that might be interpreted as James's "statement" or "admission," the signature of Shawn Earl James shows he was present in court. It is an oddity that the same documents could be used to prove both the corpus delicti and the knowledge element of a crime. But that circumstance is because of the peculiar nature of the documents. Each Order Setting Conditions of Release can be considered without the language explaining the consequences of failing to appear. If considered in that light, his signature is not a "statement" at all but merely evidences James's presence in court when the court ordered his later appearance.

Assuming there is a problem with parsing the Order Setting Conditions of Release from James's signature acknowledging that he understood and would comply with the order, no such disability exists with the Notice of Trial Setting. The notice contains an order to appear for the Omnibus Hearing on October 9, 1997 along with a warning that failing to appear is a crime. And the signature of Shawn Earl James appears acknowledging his presence when the court gave this notice. This is sufficient independent evidence of corpus delicti to support the admission of the other documents. The notice does not contain any adoptive admissions and permits the inference that James knew of the date he was expected to appear. Of course, once that document was admitted, the other court documents

were sufficient to prove his knowledge because of the statement that he had read them and he agreed to appear on October 9, 1997.

Affirmed.

ARMSTRONG, C.J., and MORGAN, J., concur.