STATE OF NORTH CAROLINA,
v.
JULIUS CORDETTE HOOKER.
No. COA09-190.
Court of Appeals of North Carolina.
Filed February 2, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Tina A. Krasner, for the State.
Eric A. Bach for defendant-appellant. 
ELMORE, Judge.
Julius Cordette Hooker (defendant) appeals from judgments and commitments entered 13 June 2008 after a jury returned verdicts of guilty on charges of conspiracy to commit robbery with a dangerous weapon, second degree kidnapping, and robbery with a dangerous weapon. Defendant was sentenced to consecutive terms of 146 to 185 months' imprisonment for the robbery with a dangerous weapon charge and 59 to 80 months' imprisonment for the conspiracy and kidnapping charges. Defendant now appeals his conviction. For the reasons stated below, we find defendant received a trial free from error.
The State's evidence at trial tended to show that sometime before 25 February 2007, defendant approached Brandi Howard (Brandi), and the two discussed the possibility of robbing a drug dealer. Brandi mentioned to defendant that she had purchased marijuana from Chester Bass (Chester) and Brandi testified that defendant thought it would be a good idea to rob Chester.
On 25 February 2007, defendant, Caesar Hooker (Caesar), and Terena Lawrence (Terena) came over to Brandi's apartment. The group sat in Brandi's apartment bedroom, which was across from Chester's apartment, and began to plan the robbery. Brandi testified that, while defendant was at her apartment, he had in his possession a handgun.
Chester testified that, sometime during that evening, Brandi called Chester to inform him that she would be returning a movie she had borrowed from him. Brandi, defendant, and Caesar then walked to Chester's apartment sometime around 9:00 or 10:00 p.m. Chester shared the apartment with his fiancée and his nephew, Justin Rana (Justin).
Brandi knocked on Chester's door, and when Chester answered, defendant jumped around Brandi and hit Chester's head with a gun. Brandi and Caesar rushed in, and defendant hit Chester with the gun a couple more times before Chester fell. Justin got up after hearing the commotion and Caesar ran towards Justin's bedroom armed with a knife. As Caesar and Justin began to wrestle in between Justin's bedroom and the hallway, defendant hit Chester a couple more times with the gun and told Chester "not to look up and that he wanted all [his] money and stuff or he was going to kill [him]." Defendant pulled Chester away from the wall and started to tie Chester with duct tape before Caesar came in and finished tying Chester. After Chester was bound, defendant took Chester's wallet and some other money from Chester's pocket.
Then defendant came into Justin's bedroom, hit Justin's back with the gun, and instructed Justin to stay down. While Justin remained on the ground, defendant proceeded to Justin's dresser and took a couple of watches, an iPod, and some cash. Thereafter, defendant left the bedroom and Caesar came in and duct taped Justin's hands and legs.
Defendant and Caesar struggled to open the back door and Chester eventually instructed them on how to exit. Chester was able to loosen the duct tape, and Brandi, who was never tied up, retrieved a knife from the kitchen and cut the tape off Chester and Justin. Afterwards, Brandi went to a neighbor's house to hide, but the police eventually found her hiding in a storage area. Brandi testified that she initially lied to the police and told them that she was a victim because she was afraid of going to jail. However, she later admitted her involvement.
Defendant and Caesar returned to Terena's house in Sanford. Terena testified that as defendant, Caesar, and Brandi were heading to Chester's apartment, defendant told Terena to meet him at the stop sign at the entrance of the apartment complex in five minutes. Terena gave Caesar a ride home and returned to her home to pick up defendant, and this was the last time Terena saw defendant until the trial.
On direct examination, Brandi testified that, in 2007, she had been convicted of possession of stolen goods in Harnett County and was placed on probation. Brandi further testified that she had recently gone to court in Lee County and received probation after pleading guilty to a felony larceny charge unrelated to this case. The State also introduced Brandi's guilty plea to conspiracy to commit robbery with a dangerous weapon regarding the Chester Bass robbery and sentencing was continued to allow Brandi to testify in defendant's case. Brandi had been in custody for sixteen months while awaiting trial.
At the close of all evidence, defendant moved to dismiss the second degree kidnapping charge, arguing that the State's evidence was insufficient to support a conviction of that offense. The trial court denied the motion. The trial court instructed the jury that it could return verdicts of guilty of conspiracy to commit robbery with a dangerous weapon, second degree kidnapping as to Chester Bass, guilty of robbery with a dangerous weapon as to Chester Bass, or not guilty. The jury found defendant guilty on all three charges.

I.
Defendant first argues that the trial court erred by denying his motion to dismiss the second degree kidnapping charge. Specifically, defendant argues that the kidnapping was intertwined with the robbery, making the restraint part of the robbery rather than a separable offense. We disagree.
"Upon defendant's motion for dismissal, the question for the [c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002).
In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both.
Id. at 596, 573 S.E.2d at 869 (citations and quotations omitted).
Pursuant to North Carolina General Statute § 14-39, kidnapping is defined as:
(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
. . .
(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]
N.C. Gen. Stat. § 14-39(a) (2007). "If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree[.]" N.C. Gen. Stat. § 14-39(b) (2007). On the verdict sheet, the jury had the option to find defendant not guilty or find him guilty of kidnapping based on one of the two above-described circumstances  that is, guilty of kidnapping either by terrorizing Chester or for facilitating flight after the robbery  and the jury returned a unanimous verdict finding the latter.
Because restraint is "an inherent, inevitable element" of robbery with a dangerous weapon, for a defendant's restraint of the victim in such situations to form the basis of a separate kidnapping charge, there must have been additional restraint "separate and apart" from that inherent in the commission of the felony. State v. Irwin, 304 N.C. 93, 102-03, 282 S.E.2d 439, 446 (1981). Our Supreme Court elucidated this point in State v. Johnson:
"Restraint" connotes a restraint separate and apart from that inherent in the commission of the other felony. If the restraint is an inherent, inevitable element of a joined armed robbery, then no separately punishable offense of kidnapping can exist. The key question is whether the victim is exposed to greater danger than that inherent in the armed robbery itself or subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.
337 N.C. 212, 221, 446 S.E.2d 92, 98 (1994) (quotations and citations omitted).
Taking the evidence in the light most favorable to the State, the evidence presented at trial tended to show the following: When defendant and Caesar entered Chester's apartment, defendant was armed, knocked Chester to the ground with his gun, and instructed Chester to "stay down." Defendant then took Chester's wallet and cash from Chester's wallet, then went to the bedroom. When he emerged, he bound Chester's hands and feet with duct tape. After searching the apartment for valuables, the defendant left the apartment.
This Court has upheld convictions for kidnapping in very similar circumstances  that is, where victims were bound and beaten during the commission of the robbery. See, e.g., State v. Beatty, 347 N.C. 555, 559, 495 S.E.2d 367, 370 (1998) (upholding second degree kidnapping conviction in addition to robbery conviction where victim's wrists were bound with tape and he was kicked in the back because such actions were not an inherent part of the robbery); State v. Pigott, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (upholding first degree kidnapping conviction where the defendant tied the victim's hands, searched for money, asked victim where other valuables were, then tied the victim's feet and hands together, shot the victim, and continued to search). Defendant's attempt to distinguish the facts at hand by noting that both victims here fought back and thus had to be restrained during the robbery  thus, defendant argues, making the restraint an inherent part of the robbery  is therefore unavailing.
Accordingly, we hold that the trial court properly submitted the second degree kidnapping charge to the jury since the State presented sufficient evidence to support each element of second degree kidnapping and that defendant was the perpetrator of the crime. Therefore, the trial court did not err by submitting the second-degree kidnapping charge to the jury and by denying defendant's motion to dismiss the charge.

II.
Defendant next argues that the trial court committed plain error by allowing the State to impeach Brandi during direct examination on that fact that she had a prior felony conviction and had pled guilty to the charge of conspiracy.
The standard of review on appeal when trial counsel fails to object to an evidentiary rule is plain error. State v. Carrillo, 164 N.C. App. 204, 209, 595 S.E.2d 219, 223 (2004). "Plain error is error `so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.'" State v. Leyva, 181 N.C. App. 491, 499, 640 S.E.2d 394, 399 (2007) (quoting State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987)).
Our Supreme Court has held that "neither a conviction, nor a guilty plea, nor a plea of nolo contendere by one defendant is competent as evidence of the guilt of a codefendant on the same charges." State v. Campbell, 296 N.C. 394, 399, 250 S.E.2d 228, 230 (1979).
During its direct examination, the State questioned Brandi, its key witness, about her prior felony convictions of possession of stolen goods and felony larceny, as well as about her guilty plea regarding her role as a co-defendant in the present case. When the State questioned Brandi about the specific charge to which she pled guilty in relation to this case, she expressed confusion as to what the actual charge had been; in response, the State presented her with Exhibit 22, the plea agreement showing that the charge was conspiracy to commit robbery with a dangerous weapon. At that point, the State continued:
Q: And have you been promised anything in return for your agreement to plead guilty to that charge?
A: No, I have not.
Q: Was sentencing continued in your case to allow you to testify in this matter?
A: I am sorry.
Q: Was sentencing in your case continued to allow you to testify in this matter?
A: Yes, it was.
Q: Other than agreeing to continue sentencing, has anybody agreed to do anything else or promised you or in any way to testify here today?
A: They have not.
Defendant argues that the State's questioning of Brandi regarding her guilty plea during her direct examination prejudiced defendant because Brandi was a co-conspirator, thus causing defendant, who did not testify, to appear "guilty by association." We disagree and hold the trial court did not commit plain error.
The State offered the evidence of Brandi's guilty plea not to impeach her testimony, but rather to demonstrate that she was testifying on her own behalf and that she had not been offered anything in exchange for her testimony. Defendant is correct that, in certain cases, our courts have held a co-defendant's guilty plea to be irrelevant evidence whose admission constituted error. See, e.g., State v. Baskin, 190 N.C. App. 102, 106, 660 S.E.2d 566, 570 (2008). However, defendant fails to show how the admission of the guilty plea amounted to plain error; indeed, the strongest claim defendant makes on this point is that the admission "caused a negative implication" against him. At no time does he contend or offer any support for a contention that, had this testimony not been admitted, the outcome of the trial would likely have been different. As such, defendant has not shown that plain error exists.
Therefore, we hold the trial court did not commit plain error by allowing the State to question Brandi on her prior felony convictions or by admitting her guilty plea during the State's direct examination.
No error.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).