IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31515-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH JAMES GOGGIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. – Joseph Goggin appeals his felony driving under the influence (DUI)

jury conviction. In addition to his evidence insufficiency challenge, Mr. Goggin contends

the trial court erred in (1) admitting blood alcohol test results without an additional

independent-testing advisement, and (2) admitting an Idaho DUI judgment and

sentence in violation of his state confrontation rights. We affirm.

FACTS

On December 17, 2011, Spokane police officer Barry Marcus responded to a call

about a person, later identified as Mr. Goggin, possibly driving under the influence of an

intoxicant. Upon contact with Mr. Goggin, Officer Marcus noticed the odor of intoxicants

on Mr. Goggin's breath and observed he was stumbling and had slurred speech. Mr.

Goggin failed field sobriety tests. Officer Marcus then arrested Mr. Goggin for DUI.

After taking Mr. Goggin in for a blood alcohol concentration (BAC) test, Officer Marcus

read him the implied consent warnings, including the right to have additional tests performed by a person of his own choosing. Mr. Goggin indicated he understood his rights and signed the implied consent form. When Mr. Goggin refused the breath test, Officer Marcus obtained a search warrant to draw a sample of Mr. Goggin's blood that was taken about three hours after his arrest without any further independent-testing advisement.

Alleging Mr. Goggin had four prior DUI convictions, the State partly charged him with felony driving under the influence of an intoxicating liquor. He moved to suppress the results of the blood test based on the officer's failure to advise him of his right to an additional test after obtaining the warrant. The trial court concluded, "[t]his was a blood draw authorized by a search warrant. The trooper did not have to advise the defendant of the right to additional tests." Clerk's Papers (CP) at 23. The court explained:

> The trooper was not mandated by the statute to get a search warrant. It was a decision, a discretion [sic] decision on his part to basically seek out further evidence by a neutral and detached magistrate.
> In no way did the Court see that as mandatory, and the trooper could have at that time got an implied consent warning, taken a refusal and gone with it.

Report of Proceedings (RP) (April 26, 2012) at 17.

At trial, brothers Jared and Jordan Berezay testified that on December 17, 2011, around 5:00 p.m., they were driving when they were abruptly cut off by a man later identified as Mr. Goggin. They saw Mr. Goggin swerving left and right and crossing the center line into oncoming traffic, causing other cars to swerve out of the way. The

2

brothers called 911 and followed Mr. Goggin until he parked. According to Jared Berezay, when Mr. Goggin exited his car he was staggering and smelled of alcohol. Jordan Berezay noticed Mr. Goggin "had a hard time keeping his balance" and was "stumbling" toward Jared. RP at 265.

Liberty Lake Police Officer Taj Wilkerson responded first. He testified Mr. Goggin's speech was "thick tongued and slurred." RP at 291. Mr. Goggin told Officer Wilkerson he had had a "few beers" at a bar. RP at 292. Officer Wilkerson observed Mr. Goggin was "very slow to respond to my questioning." RP at 293.

Trooper Barry Marcus testified when he contacted Mr. Goggin, he noticed Mr. Goggin struggled to get out of his car, could not maintain his balance, and had "a strong odor of intoxicants on his breath." RP at 326. He related Mr. Goggin had difficulty focusing and his eyes were watery and bloodshot. Trooper Marcus then administered the three standard field sobriety tests. According to the Trooper, Mr. Goggin's ability to perform the tests was "impaired pretty well by alcohol." RP at 342. He staggered, could not maintain his balance or put one foot in front of the other, could not stand on one leg, perform the eye tracking test, or recite his ABCs.

During cross-examination, defense counsel asked Trooper Marcus whether he re-read the implied consent warnings to Mr. Goggin after obtaining the search warrant:

> [Defense counsel]: Did you at any time advise him as part of any warnings related to the blood test that he could get an additional blood test?

3

> [Trooper Marcus]: That was in part of the implied consent warnings for breath. It states in there that you have the right to additional tests administered by a qualified person of your own choosing.
> [Defense counsel]: You have separate warnings for blood; do you not?
> [Trooper Marcus]: We do, but implied consent warnings for blood weren't read in this case.

RP (Feb. 27, 2013) at 399.

Dr. Naziha Nuwayhid, PhD, a forensic toxicologist, testified Mr. Goggin's blood sample tested 0.32 gram per 100 milliliters and related a person's ability to drive is impaired at 0.08 gram per milliliter. She estimated Mr. Goggin had the equivalent of 16 standard drinks in his system at the time of his arrest.

The State moved to admit certified copies of four prior DUI judgment and sentences bearing Mr. Goggin's name. Defense counsel objected to their admission, arguing the State was required to bring in a witness to verify the documents. He argued the admission of the documents without a witness to verify them violated his confrontation rights under *Crawford*.[1] The court rejected Mr. Goggin's argument, reasoning certified court records are admissible under RCW 5.44.010 and are not testimonial evidence, rendering *Crawford* inapplicable. Even so, to identify Mr. Goggin as the person in the Washington State DUI judgment and sentences, the State produced related booking photographs and called the police officers who had arrested Mr. Goggin on the 2003, 2004, and 2006 DUI cases.

---

[1] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

4

After the State initially rested, the trial court allowed the State to reopen to inform the jury it had admitted exhibits 5, 7, 9, and 11. Mr. Goggin unsuccessfully argued even if the judgment and sentence had been admitted "there's not been any testimony about how the arrest occurred if, indeed, it did occur in the state of Idaho." RP at 549. Mr. Goggin renewed his motion to dismiss based on the State's failure to produce a witness from Idaho who could provide evidence that he had been arrested in Idaho. The court denied the motion, finding sufficient circumstantial evidence to go to the jury.

The jury found Mr. Goggin guilty of felony DUI. He appealed.

ANALYSIS

A. Admissibility of Blood Test Results

The issue is whether the court erred in admitting Mr. Goggin's blood alcohol test results. He contends the test should not have been admitted because the State failed to re-advise him of his right to additional testing after it administered a blood draw pursuant to a search warrant. The State responds it was not statutorily mandated to read the implied consent warnings for a blood alcohol test because the arresting officer was not investigating a crime that statutorily mandated a blood draw under RCW 46.20.308(3).

When reviewing a suppression motion, we determine if substantial evidence supports the findings of fact and if the findings support the conclusions of law. *State v. Dempsey*, 88 Wn. App. 918, 921, 947 P.2d 265 (1997). We review solely those findings

5

of fact to which error has been assigned; we treat unchallenged findings as verities on appeal. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We review conclusions of law de novo. *State v. Eisfeldt*, 163 Wn.2d 628, 634, 185 P.3d 580 (2008).

Mr. Goggin does not challenge the court's findings of fact. Thus, our review is confined to the trial court's conclusion that the arresting officer was not required to advise Mr. Goggin of the right to additional tests because the blood draw was authorized by a search warrant, not the implied consent statute.

RCW 46.20.308(1) partly states:

> Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath for the purpose of determining the alcohol concentration, . . . in his or her breath if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503. *Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood.*

(Emphasis added.) RCW 46.20.308(2) partly states "[t]he officer shall inform the person of his or her right to refuse the breath test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506." RCW 46.20.308(3) allows either breath or blood testing under circumstances generally concerning unconsciousness or arrest for certain crimes not

6

applicable here. Mr. Goggin was arrested for DUI. Thus, he was not subject to the mandatory test provision of RCW 46.20.308(3) for felony DUI.

Relying primarily on *State v. Turpin*, 94 Wn.2d 820, 620 P.2d 990 (1980), Mr. Goggin argues because he was subject to a mandatory blood draw, the officer should have advised him of his right to an additional blood test. He reasons the officer's failure to advise him of his right to an additional test mandates suppression of the blood test and a new trial. But *Turpin* is factually distinguishable.

Ms. Turpin was arrested for negligent homicide, a crime subject to the mandatory test provisions of RCW 46.20.308(3). *Turpin*, 94 Wn.2d at 822. After arrest and a blood draw to determine the blood alcohol content in her blood, police did not advise Ms. Turpin of her right under the implied consent statute to have an independent blood test performed. The *Turpin* court held the State has a statutory duty to notify a person accused of vehicular homicide that he or she has a right to an independent blood test and suppressed the blood test results because Ms. Turpin had not been able to gather potentially exculpatory evidence.

In contrast to *Turpin*, the arresting trooper advised Mr. Goggin of his right to additional tests, and Mr. Goggin acknowledged he understood this right. Thus, unlike the defendant in *Turpin*, Mr. Goggin was aware of the right to seek alternative testing and gather potentially favorable evidence in his defense. Significantly, the blood test

7

was taken pursuant to a search warrant supported by probable cause, not under the mandatory blood or breath test provision of RCW 46.20.308(3).

Accordingly, the trial court correctly reasoned Mr. Goggin was no longer subject to the requirements of the statute. It follows that once the officer obtained a search warrant for a blood alcohol test independent of RCW 46.20.308(3), he was not required to re-advise Mr. Goggin of his right to additional tests.

Our conclusion is supported by *City of Seattle v. Robert St. John*, 166 Wn.2d 941, 946, 215 P.3d 194 (2009), in which the Washington Supreme Court held that the plain language of RCW 46.20.308(1) allows officers to "*obtain a search warrant for blood alcohol tests regardless of the implied consent statute.*" *St. John*, 166 Wn.2d at 946 (emphasis added). In *St. John*, the motorcyclist refused to take the voluntary test; but, the evidence that the motorcyclist was driving under the influence constituted sufficient probable cause to justify a warrant. *Id.* at 948. Similarly here, the search warrant and subsequent blood alcohol test were the result of evidence showing Mr. Goggin was driving under the influence. Thus, the State was not required to re-advise Mr. Goggin of his right to additional tests after issuance of the search warrant.

Even if the blood test results were admitted in error, any error was harmless. We review potentially erroneous rulings of admissibility under the nonconstitutional harmless error standard. *State v. Morales*, 173 Wn.2d 560, 582, 269 P.3d 263 (2012). An erroneous ruling of admissibility will not amount to reversible error unless the court

8

determines that "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Calegar*, 133 Wn.2d 718, 727, 947 P.2d 235 (1997) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). The outcome of a trial is materially affected if the jury would have reached a different verdict had the error not occurred. *State v. Hardy*, 133 Wn.2d 701, 712, 946 P.2d 1175 (1997).

Given our facts, it is unlikely the jury would have reached a different verdict had the trial court excluded the evidence of Mr. Goggin's blood alcohol test. Mr. Goggin was seen swerving into oncoming traffic, his breath smelled of alcohol, his eyes were bloodshot and watery, he could not maintain his balance, his speech was slurred, he was slow to answer questions, and he failed all of the field sobriety tests. From this evidence, a jury could reasonably conclude that Mr. Goggin was under the influence of or affected by intoxicating liquor. RCW 46.61.502(1)(b). Any evidentiary error was harmless.

In sum, we conclude the trial court did not err in admitting the blood alcohol test.

### B. Evidence Sufficiency

The issue before us is whether sufficient evidence supports Mr. Goggin's felony DUI conviction. Mr. Goggin contends the certified copy of an Idaho judgment and sentence for DUI that bears his name is insufficient proof of a prior conviction because the State failed to prove he was the person arrested in Idaho.

9

Evidence is sufficient if, when viewed in a light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

To convict Mr. Goggin of felony DUI, the State had to prove that on December 17, 2011, Mr. Goggin drove a vehicle under the influence of or affected by intoxicating liquor, he had four or more prior DUI convictions within 10 years and the driving occurred in the State of Washington. RCW 46.61.502(1)(c), (6)(a). That the defendant has four or more prior offenses is an essential element of felony DUI. *State v. Santos*, 163 Wn. App. 780, 783, 260 P.3d 982 (2011). The best evidence of a prior conviction is a certified copy of a judgment and sentence. *Santos*, 163 Wn. App. at 784.

In criminal trials, the State has the burden of establishing, beyond a reasonable doubt, the identity of the accused as the person who committed the offense. *State v. Huber*, 129 Wn. App. 499, 501, 119 P.3d 388 (2005). When, as here, a previous conviction is an underlying element of the current charged offense, "[t]he State must do more than authenticate and admit the document; it must also show beyond a

10

reasonable doubt 'that the person named therein is the same person on trial.'" *Huber*, 129 Wn. App. at 502 (quoting *State v. Kelly*, 52 Wn.2d 676, 678, 328 P.2d 362 (1958)). "Identity of names alone" is insufficient to establish that the person named in the document is the same person on trial. *Huber*, 129 Wn. App. at 502 (quoting *United States v. Jackson*, 368 F.3d 59, 63-64 (2d Cir. 2004). Because many people share identical names, the State must show by independent evidence that the person named in the document is the defendant in the present action. *Id.* This burden can be met by presenting booking photographs, booking fingerprints, eyewitness identifications, a certified copy of a driver's license, or other distinctive personal information. *Id.* at 503; *State v. Chandler*, 158 Wn. App. 1, 7, 240 P.3d 159 (2010).

Here, the State met its burden of proving Mr. Goggin was the same Joseph Goggin convicted of the 2009 DUI in Idaho by submitting Mr. Goggin's 2007 to 2011 Washington State Identification card. This photographic identification card included Mr. Goggin's height and weight, hair and eye color, and his address. This information matched the identifying information in the 2009 Idaho judgment and sentence. The identification card was issued in 2007 and was valid until 2011; thus, it corresponded with the date of the Idaho conviction. Accordingly, the State provided sufficient evidence of this fourth DUI to support the conviction for felony DUI.

11

### C. Confrontation Rights

The issue is whether Mr. Goggin's confrontation rights under the Washington Constitution were violated when the trial court admitted Exhibit 5, the Idaho judgment and sentence. Mr. Goggin contends his right to confront the witnesses against him was violated by the absence of any testimony that he was the person named in Exhibit 5. He argues the right of confrontation under article I, section 22 of the Washington Constitution requires more than documentary evidence to support the conviction, arguing, "Article I, section 22 mandates and requires a face to face meeting to support the identification of the defendant in a criminal prosecution." Br. of Appellant at 20. Mr. Goggin asks us to conduct a *Gunwall*[2] analysis and hold that Washington's confrontation clause requires the State to "bring a person to admit the judgment and sentences." Br. of Appellant at 17.

Evidence rulings are reviewed for an abuse of discretion. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 691, 101 P.3d 1 (2004). A trial court abuses discretion when its "'decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons.'" *Id.* (quoting *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). In considering whether the confrontation clause was violated, our review is de novo. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

---

[2] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

Initially, we must decide whether to analyze Mr. Goggin's argument under the Sixth Amendment to the United States Constitution or under article I, section 22 of the Washington Constitution. Mr. Goggin raises the *Gunwall* argument for the first time on appeal. Under RAP 2.5(a)(3), we are not required to consider the argument because he has failed to assert a manifest constitutional error exception. *State v. Bertrand*, 165 Wn. App. 393, 400, 267 P.3d 511 (2011).

The Washington Supreme Court has concluded article I, section 22 of our State's constitution is subject to an independent analysis from the Sixth Amendment for the confrontation clause and, therefore, a *Gunwall* analysis is no longer necessary. *State v. Pugh*, 167 Wn.2d 825, 839, 225 P.3d 892 (2009). Instead, we analyze whether the unique characteristics of the state provision and its prior interpretations compel a particular result. *Pugh*, 167 Wn.2d at 835. This entails "an examination of the constitutional text, the historical treatment of the interest at stake as reflected in relevant case law and statutes, and the current implications of recognizing or not recognizing an interest." *State v. Chenoweth*, 160 Wn.2d 454, 463, 158 P.3d 595 (2007).

Article I, section 22 of the Washington Constitution provides that "[i]n criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face." The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Quoting *State v. Foster*, 135 Wn.2d 441, 462-63, 957 P.2d 712

13

(1998), our Supreme Court recently noted that although article I, section 22 is unique in using the language "face to face" "'the meaning of the words used in the parallel clauses is substantially the same.'" *State v. Lui*, 179 Wn.2d 457, 468, 315 P.3d 493, *cert. denied*, 134 S. Ct. 2842 (2014). Following this precedent, we conclude the text of the Washington Constitution does not compel a result different from that under the Sixth Amendment.

In *Lui*, the court noted it had "consistently rejected arguments that the state confrontation clause provides greater protections than the federal confrontation clause." *Lui*, 179 Wn.2d at 469. The court then cited numerous cases in support of this conclusion, including *Pugh*, which held that the excited utterance hearsay exception does not violate state confrontation rights. *Id.* at 469. Mr. Goggin does not point to any treatment of the Washington provision that is more protective of the right to confrontation than the federal standard.

Next, Mr. Goggin urges us to hold article 1, section 22 requires the State to bring a person to court to authenticate the judgment in order to have a "face to face" meeting with adverse witness. But he fails to explain why a broader reading of the Washington confrontation clause is necessary. The constitutional interest at issue here is adequately addressed by the Sixth Amendment analysis.

The Sixth Amendment confrontation clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" *Crawford v. Washington*, 541

14

U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (citation omitted). Thus, in a criminal trial, the State cannot introduce a testimonial statement from a nontestifying witness unless the witness is unavailable and the defendant has a cross-examination opportunity. *Crawford*, 541 U.S. at 68. A statement is testimonial when its primary purpose is to establish facts relevant to a criminal prosecution. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). *Crawford* allows non-testimonial statements. *State v. Benefiel*, 131 Wn. App. 651, 653-54, 128 P.3d 1251 (2006).

In *Benefiel*, this court held a defendant's judgment and sentence is not testimonial because "[i]t is not a statement for the purpose of establishing some fact and it does not constitute a statement the declarant would reasonably believe would be used by the prosecutor in a later trial." *Benefiel*, 131 Wn. App. 656. In *Benefiel*, one of the issues before this court was whether admission of the defendant's judgment and sentence violated the confrontation clause of the Sixth Amendment. *Id.* at 655. Mr. Benefiel argued, as does Mr. Goggin, that the admission of a judgment and sentence violates the confrontation clause because he was not allowed to cross-examine the clerk who attested to the document. *Id.* The *Benefiel* court rejected his argument,

15

noting that under RCW 5.44.010[3] and ER 902(d), certified court records are self-authenticating and admissible and that court records are not testimonial. *Id.* at 655-56.

Considering *Benefiel*, the trial court did not err in admitting Mr. Goggin's judgment and sentence as a nontestimonial, self-authenticating public record under RCW 5.44.010. Our conclusion is in accord with the purpose of article I, section 22, which is to prevent the admission of unconfronted statements "[w]here cross examination would serve to expose untrustworthiness or inaccuracy." *State v. Ryan*, 103 Wn.2d 165, 175, 691 P.2d 197 (1984). Regarding confrontation clause protections, we evaluate whether admission of the hearsay statement constitutes a "'material departure from the reason underlying the constitutional mandate guaranteeing to the accused the right to confront the witnesses against him.'" *Pugh*, 167 Wn.2d at 837 (quoting *State v. Ortego*, 22 Wn.2d 552, 563, 157 P.2d 320 (1945)).

Mr. Goggin's Idaho judgment and sentence was inherently trustworthy. It was not created in anticipation of litigation or to prove a fact at trial; therefore, it was not necessary to cross-examine the clerk who certified the document. A certified record not prepared for use in a criminal proceeding but created for the administration of an entity's affairs is not testimonial. *State v. Jasper*, 174 Wn.2d 96, 112, 271 P.3d 876 (2012).

---

[3] RCW 5.44.010 provides: "The records and proceedings of any court of the United States, . . . shall be admissible in evidence in all cases in this state when duly certified by the attestation of the clerk, . . . or other officer having charge of the records of such court, with the seal of such court annexed."

16

No. 31515-1-III
*State v. Goggin*

Trustworthiness of public records exists because of the declarant's official duty and high probability that he or she has performed his public duty to make an accurate record. *State v. James*, 104 Wn. App. 25, 34, 15 P.3d 1041 (2000). Accordingly, the admission of the Idaho judgment and sentence did not violate Mr. Goggin's confrontation rights.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, J.

WE CONCUR:

_____     _____
Siddoway, C.J.                Korsmo, J.

17