# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| STATE OF WASHINGTON, | No. 47003-9-II |
|---|---|
| Respondent, | |
| v. | |
| JAMES DILLARD APPLEGATE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found James Dillard Applegate guilty of second degree assault—domestic violence. He appeals, alleging evidentiary errors. He further alleges the sentencing court erred by imposing legal financial obligations (LFOs) without inquiring into his ability to pay. We affirm.

## FACTS

Applegate and his sister, Debra Applegate, lived together with their mother. One evening the siblings got into an argument which culminated in a physical altercation. When police arrived, Applegate approached Officer David Krebs with his hands up and stated, "I did it. Take me in." 1 Report of Proceedings (RP) at 10. Officer Krebs then went inside the house and observed Debra,[1] who was "extremely agitated" and "really emotional." 1 RP at 11-12. She was pacing and showed "hystericalness." 2 RP at 181.

---

[1] We use Debra Applegate's first name to avoid confusion. No disrespect is intended.

Officer Krebs noticed Debra had a lump on her head, blood on her forehead and mouth, swelling over her eye, a cut on her chin, and redness and bruising around her neck. Debra told Officer Krebs that Applegate hit her in the head and face, and then grabbed her neck with both hands and strangled her until she almost lost consciousness, saw spots, and involuntarily urinated. Debra eventually calmed down and provided a sworn written statement of the details she previously told Officer Krebs. A few days later, Officer Matthew Bachelder, a former domestic violence detective, returned to the Applegate residence to photograph Debra. He noted bruising and redness around her chin and left eye but did not recall seeing marks around her neck.

The State charged Applegate with second degree assault—domestic violence, by strangulation or suffocation.

During trial, Debra testified she was intoxicated during the incident and did not remember what happened. Over a defense objection, Officer Krebs testified to Debra's statement on the night of the incident that Applegate hit her in the head and face, and then grabbed her neck with both hands and strangled her until she almost lost consciousness, saw spots, and involuntarily urinated. Over a defense objection, the trial court also allowed the State to admit Debra's written statement, concluding that the affidavit was properly admissible as a Smith[2] affidavit.

The trial court also admitted, over a defense objection, the testimony of Officer Bachelder, who testified that based on his training and experience, signs of strangulation included breathing issues and involuntary urination. The trial court further admitted several photographs that were taken on the night in question that showed redness and bruising around Debra's neck.

---

[2] *State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982).

Applegate testified in his defense, claiming Debra was the aggressor and he was unaware how she received her injuries. Applegate, however, admitted to telling the police to "take me to jail." 3 RP at 348.

A jury found Applegate guilty as charged. The sentencing court sentenced Applegate to 135 days and imposed $2,650 in LFOs without objection. Applegate appeals.

## ANALYSIS

A.      EVIDENTIARY RULINGS

Applegate contends the trial court erred by admitting Debra's oral and written statements and allowing Officer Bachelder to testify as an expert. We disagree.

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Finch*, 137 Wn.2d 792, 810, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999). A court abuses its discretion when its evidentiary ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). We may uphold a trial court's evidentiary ruling on the grounds the trial court used or on other proper grounds the record supports. *State v. Powell*, 126 Wn.2d 244, 259, 893 P.2d 615 (1995). We will reverse an erroneous evidentiary ruling only if there is a reasonable probability that the outcome of the trial would have been materially affected had the error not occurred. *State v. Goggin*, 185 Wn. App. 59, 69, 339 P.3d 983 (2014), *review denied*, 182 Wn.2d 1027 (2015).

1.      Admission of Oral Statement

Applegate first contends the trial court erred by allowing Officer Krebs' hearsay testimony of Debra's statements on the night of the incident. This challenge fails.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" in the statement. ER 801(c). Hearsay statements are inadmissible unless they fall within one of the exceptions in the Rules of Evidence. ER 802. One such exception is for the declarant's "excited utterances," defined as "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). To qualify as an exited utterance, a statement must meet three requirements: (1) a startling or exciting event must have occurred, (2) the declarant's statement must have been made while he or she was under the stress of the startling or exciting event, and (3) the statement must be related to the startling or exciting event. *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007).

Applegate argues the second requirement was not satisfied because there was no showing Debra was still under the stress of a startling event when speaking with Officer Krebs. Officer Krebs testified Debra appeared "extremely agitated" and "really emotional." 1 RP at 11-12. Debra was pacing and showed "hystericalness." 2 RP at 181. While Officer Krebs testified she eventually calmed down, she remained agitated and emotional.

Applegate also argues the second requirement was not satisfied because Debra's responses were to Officer Krebs' questions versus blurted out statements. In *State v. Chapin*, 118 Wn.2d 681, 690, 826 P.2d 194 (1992), our Supreme Court noted that when a statement is made in answer to a question it may raise doubts as to whether the statement is in response to a startling event, but

"[t]he fact that a statement is made in response to a question will not by itself require the statement be excluded." Based on Debra's actions throughout Officer Krebs' contact with her, she was clearly under the stress of an exciting event that was not minimized by his questioning. Thus, because the trial court had tenable grounds to allow the hearsay testimony under the excited utterance exception, it did not abuse its discretion.

2.    Admission of Written Statement

Applegate next argues the trial court erred by admitting Debra's prior written statement. He argues that the reliability test articulated in *State v. Smith*, 97 Wn.2d 856, 863, 651 P.2d 207 (1982), is invalid after the United States Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Even if the trial court erred in admitting Debra's prior written statement, it will not impact Applegate's conviction because any error would be harmless. An erroneous admission of evidence does not amount to reversible error unless the court determines within reasonable probability that the outcome of the trial would have been materially affected had the error not occurred. *Goggin*, 185 Wn. App. at 69. Here, Applegate admitted to wrongdoing when officers first arrived; several admitted photographs show Debra's injuries, including redness and bruising around her neck; and Officer Krebs properly testified to Debra's oral statements alleging Applegate tried to strangle her. Given the evidence, there is no reasonable probability that the outcome of the trial would have been materially affected had the statement not been admitted. Thus, Applegate's argument is unpersuasive.[3]

---

[3] Applegate further argues the written statement would not be admissible as a recorded recollection under ER 803(a)(5) because Debra had a "complete lack of recollection." Br. of Appellant at 16

3.      Officer Bachelder's Testimony

Applegate next argues the trial court erred by allowing Officer Bachelder to testify about the signs of strangulation. This challenge also fails.

Expert testimony is admissible when the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702. A witness can be "qualified as an expert by knowledge, skill, experience, training, or education, [and] may testify thereto in the form of an opinion or otherwise." *Id.* Training and experience gained as a police officer can qualify that person as an expert in certain areas. *State v. Sanders*, 66 Wn. App. 380, 386, 832 P.2d 1326 (1992). Moreover, under ER 703 and 705, expert opinions can be admitted without foundation other than "testimony establishing the expert's qualifications." *Id.* (quoting 5A KARL TEGLAND, WASHINGTON PRACTICE, EVIDENCE § 311, at 482 (3d ed. 1989)).

Here, Officer Bachelder testified that before he was a patrol officer he was a domestic violence detective and went through assault training, which included recognizing the signs of strangulation. He further testified he had investigated "30 or more" strangulation cases. 2 RP at 235. He then testified that based on his training and experience, signs of strangulation included breathing issues and involuntary urination.

Given Officer Bachelder's specific training and experience, his specialized knowledge qualified him to testify about the signs of strangulation. Because the trial court had tenable grounds to admit his testimony regarding signs of strangulation, the trial court did not err.

---

n.11. This argument is improperly raised in a footnote in Applegate's opening brief without an assignment of error as required in RAP 10.3(a)(4). Given the improper raising of this issue and our conclusion that any error would be harmless, we decline to reach this issue.

6

B.     LFOs

The final issue is whether the sentencing court erred by failing to make an individualized determination of Applegate's ability to pay before imposing LFOs. The State argues this issue was not preserved for appeal. The State is correct. Applegate did not challenge the trial court's imposition of LFOs at his sentencing, so he may not do so on appeal. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), *remanded*, 182 Wn.2d 827, 344 P.3d 680 (2015). Our decision in *Blazina*, issued before Applegate's November 7, 2014 sentencing, provided notice that the failure to object to LFOs during sentencing potentially waives a related claim of error on appeal. As our Supreme Court noted, an appellate court may use its discretion to reach unpreserved claims of error. *State v. Blazina*, 182 Wn.2d 827, 830, 344 P.3d 680 (2015). We decline to exercise such discretion here.

C.     APPELLATE COSTS

Applegate objects to awarding appellate costs to the State in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612 (2016), arguing he lacks the ability to pay. We ordered the State to respond, but it did not.

The trial court entered an order of indigency for this appeal on January 5, 2015. We presume a party remains indigent "throughout the review" unless the trial court finds otherwise. RAP 15.2(f). RCW 10.73.160(1) vests the appellate court with discretion to award appellate costs. Under RAP 14.2, that discretion may be exercised in a decision terminating review. We exercise our discretion and hold that an award of appellate costs to the State is not appropriate.

We affirm.

No. 47003-9-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Melnick, J.