# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56990-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BENJAMIN HICKSON, | |
| Appellant. | |

CHE, J. — Benjamin C. Hickson appeals his convictions and sentence for second degree assault by strangulation, tampering with a witness, and four counts of felony violation of a protection order. In order to prove that Hickson had been twice previously convicted of violating no contact orders for the felony violation of a protection order charges, the State introduced a certified court record of Hickson's criminal history that included more than two previous convictions for such orders. On appeal, Hickson argues that the trial court erred by admitting that document and that his defense counsel rendered ineffective assistance by failing to object to its admission. He also argues that the State produced insufficient evidence to prove beyond a reasonable doubt that he had two prior convictions for violation of a no contact order. We disagree and affirm.

FACTS

Police responded to a domestic violence call where they encountered Jessica Chapman. Chapman had called 911 to report that her boyfriend, Hickson, had put both his hands around her

throat and squeezed and was outside of her apartment threatening her with a knife. Chapman's voice was raspy, and she appeared very nervous any time a vehicle would drive by. The responding officer noticed that Chapman had red marks on both sides of her neck and her eyes were watery. He observed petechiae, a sign of strangulation, in her eyes.

Officers eventually located Hickson and placed him under arrest. Officers subsequently learned that there was a domestic violence protection order prohibiting Hickson from contacting Chapman.

The State charged Hickson with second degree assault by strangulation, tampering with a witness, and four counts of violation of a protection order. Each charge contained a special allegation of domestic violence.

At trial, the State introduced a photo identification card for Hickson. The State also introduced a Judicial Access Browser System (JABS) report (Exhibit 23) showing Hickson's extensive history of charges for violation of a no contact order.[1] Both the photo identification card and JABS report listed Hickson's full name, birthdate, and home address. Hickson did not object to the admission of Exhibit 23, the JABS report. The report showed multiple convictions for violation of a no contact order in Shelton municipal court and was certified by the Clallam County Superior Court clerk.

---

[1] "JABS uses a Web browser to display case history information on certain kinds of cases filed in superior, district, and municipal courts in this state." Washington Judicial Ethics Advisory Opinion 13-07, 2013 WL 5780438 (2013). These cases include "superior court domestic, parentage, or dependency cases involving children or domestic violence." *Id*. JABS case history information does not include the court files themselves.

The State presented evidence that Hickson made multiple phone calls from jail asking a man to communicate with Chapman and that Hickson exchanged numerous chirp[2] messages with Chapman, who was using an alias, about getting the charges against him dropped. Hickson chirped Chapman stating, "Babe we cant sit back and wait fir trial." Chapman responded, "I know. I'll try to make something happen." Hickson then followed up with "if they know that [Chapman] has low blood sugar and the choking was from our sex toys then they gotta drop this." Clerk's Papers (CP) at 185. Hickson also chirped Chapman stating, "I told them she prob[ab]ly had low blood [s]ugar and that's how she acts . . . . The marks on her []neck were from us having sex . . . I had the receipt for [store] where I bought her a choke collar." Exhibit 19 at 144. And "But im sure if [Chapmen] went to the courthouse and told them that was [t]he case theyd have to drop it." Exhibit 19 at 142. Hickson chirped, "Im yours jessica! And I wont try to push you away anymore. Jessica . . . My bad [alias for Chapman]." Exhibit 19 at 153. Also, ". . . Not like jessica will say ive been contacting her." Exhibit 19 at 160.

Chapman testified that Hickson had not gotten physical with her on the day in question. She testified that she had been extremely high on methamphetamine and had not eaten in days. She remembered calling 911 but testified that she did not recall what happened after the call. Chapman testified the marks on her neck were from a previous consensual sexual act using either a choker or leash.

---

[2] Clallam County Jail's inmate communication system allows inmates to make calls and send and receive text messages from their jail cell to a person outside of the jail. A message is called a chirp. Inmates are given an individualized pin number. The system allows law enforcement to review chirps and listen to calls associated with a pin number.

The State played a recording of Chapman's 911 call for the jury. The responding officers also testified regarding the events of that day and Chapman's demeanor and physical state upon their arrival at the scene. The State also produced a letter written by Hickson to Chapman in which Hickson states he was disappointed in himself for getting mad enough to put hands on her. Photographs of Chapman's injuries were also introduced as exhibits at trial.

The jury found Hickson guilty as charged.

Hickson appeals.

ANALYSIS

To prove Hickson was guilty of felony violation of a court order, the State had to show that Hickson had twice been previously convicted of violating the provisions of a no-contact court order. Former RCW 26.50.110(5) (2013). To do so, the State moved to admit Exhibit 23—a JABS printout of Hickson's history of violating no contact orders. For the first time on appeal, Hickson challenges the admission of Exhibit 23. He further argues that he received ineffective assistance of counsel based on counsel's failure to object to the exhibit. Hickson also appears to argue that the State produced insufficient evidence to prove his prior convictions for violation of a no-contact order. We disagree with all of his arguments.

I. ADMISSION OF PRIOR CONVICTIONS

Hickson argues that the trial court erred by admitting Exhibit 23 showing his criminal history. Evidentiary errors are not of constitutional magnitude and cannot be raised for the first time on appeal. RAP 2.5(a); *State v. Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002). "'We adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial.'" *State v. Henson*, 11 Wn. App.

4

2d 97, 102, 451 P.3d 1127 (2019) (quoting *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009)). Because Hickson did not object to Exhibit 23's admission at trial, he failed to preserve this issue for appellate review.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Hickson also argues that his trial counsel rendered ineffective assistance for failing to object to Exhibit 23's admission because it was not properly authenticated or certified, and it was irrelevant and prejudicial. Because Hickson cannot show that an objection on any of these grounds would have been successful, his arguments fail.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review ineffective assistance of counsel claims de novo. *Estes*, 188 Wn.2d at 457. To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced him. *Id.* at 457-58. If either part of the test is not satisfied, the claim fails. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Estes*, 188 Wn.2d at 458. We begin our analysis with a strong presumption that defense counsel's performance was reasonable. *Id.* Where an appellant claims ineffective assistance of counsel based on his trial counsel's failure to object, the appellant must also show that such an objection, if made, would have been successful. *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). Accordingly, we analyze each of the

grounds upon which Hickson argues his trial counsel should have objected to Exhibit 23 to determine whether an objection would likely have been successful.

A. *Authentication/Certification*

First, Hickson argues that trial counsel should have objected to Exhibit 23's admissibility because it was not properly authenticated. We disagree that such an objection would have been sustained.

Authentication of evidence is a condition precedent to admissibility and is designed to ensure that evidence is what it purports to be. ER 901; *State v. Payne*, 117 Wn. App. 99, 106, 69 P.3d 889 (2003). RCW 5.44.010 and .040 provide a means of self-authentication for certain types of court records and public records without the necessity of presenting testimony. But self-authentication under RCW 5.44.010 and .040 is not the exclusive means to authenticate court records. Court records can also be authenticated under ER 901, ER 902 or CR 44. *In re Pers. Restraint of Connick*, 144 Wn.2d 442, 455, 28 P.3d 729 (2001); *Payne*, 117 Wn. App. at 105-10.

Under ER 901, the requirement of authentication is satisfied if the proponent of the evidence makes a prima facie showing of authenticity. *Payne*, 117 Wn. App. at 108. The party seeking to introduce the evidence must produce sufficient proof to permit a reasonable juror to find in favor of authenticity. *Id.*; *see also State v. Danielson*, 37 Wn. App. 469, 471, 681 P.2d 260 (1984). Authenticity is a preliminary determination governed by ER 104. *Bellevue v. Mociulski*, 51 Wn. App. 855, 860, 756 P.2d 1320 (1988). "'Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to

be.'" *Payne*, 117 Wn. App. at 106 (quoting *United States v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir.1989)).

Here, the State provided a JABS report showing Hickson's extensive history of violating no contact orders. Exhibit 23. The JABS report reflects numerous convictions in Shelton Municipal Court. The report is certified by the clerk of the Clallam County District Court as being a true copy of documents on file in its office. Hickson takes issue with the document being certified by the district court clerk because it reflects municipal court charges. But the district court clerk certified that the report was a true copy of documents on file in its office, and Hickson offers no evidence to suggest that the certification is inaccurate. The court clerk's certification is sufficient to support a finding that the report contained in Exhibit 23 is what it purports to be. Therefore, Hickson fails to show that an objection to the authenticity of the exhibit would have been sustained and correspondingly fails to show that his counsel was ineffective for failing to object.

B. *Evidence Irrelevant and Prejudicial*

Hickson suggests that his trial counsel should have objected to Exhibit 23 because the criminal history was irrelevant and prejudicial. We disagree that under these circumstances Hickson was prejudiced and the verdict would have been different.

Under ER 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." And ER 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a person and action in conformity with that character. Such evidence is

7

admissible if it is logically relevant to a material issue and its probative value outweighs its potential for prejudice. *State v. Vazquez*, 198 Wn.2d 239, 256-57, 494 P.3d 424 (2021).

As Hickson acknowledges, the State was required to prove that Hickson had twice previously violated no contact orders, making his criminal history highly relevant. While criminal history can be prejudicial by nature, here, the crime charged required proof of previous violations of no contact orders.

Hickson contends that the criminal history was particularly prejudicial because it contained more information than was necessary to prove his prior convictions. The length of the criminal history was not necessary to prove Hickson's two prior convictions; therefore, theoretically, Hickson's trial counsel could have moved to redact the history. However, in light of the overwhelming evidence produced at trial, as discussed below, Hickson fails to show that his attorney's failure to object to the additional information in the exhibit actually prejudiced him.

Hickson also argues that this additional lengthy criminal history bolstered the State's impeachment of Chapman. The veracity of Chapman's testimony came down to a credibility determination by the jury, which we do not second guess. The State did not rely on Hickson's criminal history to impeach Chapman. Chapman's explanation at trial for her injuries was consistent with what Hickson had messaged her to say at trial while he was in jail. The jury heard the 911 recording in which Chapman recounted the assault in detail while sounding hoarse. And the reporting officers testified that Chapman appeared nervous and showed physical signs of strangulation including marks on her neck and petechiae in her eye when they arrived on the

scene. And the jury saw photographs of Chapman's injuries and a handwritten letter from Hickson.

Given the overwhelming evidence produced at trial, there is no reasonable probability that had the criminal history contained less information the result of the proceeding would have been different. Therefore, Hickson also fails to show ineffective assistance of counsel on this ground.

### III. SUFFICIENCY OF THE EVIDENCE

A. *Insufficient Evidence of Identity Within Exhibit 23*

Hickson argues that there was insufficient evidence to establish that the "Benjamin Hickson" named within the report contained in Exhibit 23 was the same "Benjamin Hickson" who was on trial. Br. of Appellant 2. We disagree.

When, like here, a prior conviction is an element of the current crime charged, the State must prove that the person named in the document offered to prove those convictions is the same person on trial. *State v. Goggin*, 185 Wn. App. 59, 71, 339 P.3d 983 (2014); *see also State v. Huber*, 129 Wn. App. 499, 501-02, 119 P.3d 388 (2005). Identity of names alone is not sufficient. *Huber*, 129 Wn. App. at 502. Because many people share identical names, the State must show by independent evidence that the person named in the document is the defendant in the present action. *Id*. Such independent evidence need only establish prima facie that the defendant is the same person named in the document. *State v. Hunter*, 29 Wn. App. 218, 221-22, 627 P.2d 1339 (1981). The State can meet this burden by presenting booking photographs, booking fingerprints, eyewitness identifications, a certified copy of a driver's license, or other

distinctive personal information. *Huber*, 129 Wn. App. at 503; *State v. Chandler*, 158 Wn. App. 1, 7, 240 P.3d 159 (2010).

Here, the report contained in Exhibit 23 identified Hickson by his full name, birthdate, and home address. The same name, birthdate, and home address was apparent on the photo identification card admitted as Exhibit 7. This was sufficient to prima facie establish that Hickson was the person named in Exhibit 23. Accordingly, Hickson's argument fails.

B. *Insufficient Evidence of Prior Convictions Within Exhibit 23*

Hickson also argues that there was insufficient evidence to establish that Hickson had two prior convictions for violating a protection order. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *Id.* A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Id.*

Having determined that Hickson waived any argument that Exhibit 23 was erroneously admitted, to determine whether sufficient evidence supports his convictions, we consider only whether the reasonable inferences from the evidence establish that Hickson was twice convicted of violation of no contact orders such that a rational trier of fact could find him guilty. We hold that it does.

The report contained in Exhibit 23 shows that Hickson was convicted multiple times of violating a no contact order. Exhibit 23. The report identifies Hickson by the name, birthdate,

10

and address as shown on his photo identification card. Taking the evidence in the light most favorable to the State, this evidence is sufficient to prove that Hickson was twice previously convicted of violating a no contact court order.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Lee, J.