# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58816-1-II |
| Respondent, | |
| v. | |
| ANDREW RONALD GRAVES | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Andrew R. Graves appeals his conviction and sentence for one count of first degree rape of a child.  Graves argues that he received ineffective assistance of counsel when counsel failed to object to irrelevant evidence or request a limiting instruction for bad acts evidence, the trial court erred when it allowed the introduction of irrelevant evidence related to his appearance and demeanor when contacted by law enforcement, and the trial court violated his due process rights when he appeared from an in-court holding cell during sentencing.

We hold that Graves did not receive ineffective assistance of counsel.  We also hold that the trial court erred by allowing testimony about Graves' appearance and demeanor when law enforcement contacted him; however, the error was harmless.  Finally, we hold that Graves' due process rights were violated when he appeared from an in-court holding cell during sentencing, and the error was not harmless.  Accordingly, we affirm Graves' conviction, reverse Graves' sentence, and remand to the trial court for resentencing.[1]

---

[1] Graves also argues that he received ineffective assistance of counsel at sentencing, and he contends that 14 of his community custody conditions should be modified or stricken.  Because we remand for resentencing, we do not reach Graves' ineffective assistance of counsel argument

No. 58816-1-II

FACTS

In November 2020, A.N., then 13 years old, disclosed to her grandfather, Ron N., that when she was around six years old, Graves, A.N.'s stepfather, inappropriately touched her. Ron N. reported this conduct to the police.

On October 24, 2022, the State charged Graves with one count of first degree rape of a child.

A.    TRIAL

Graves appeals from a trial that took place in July 2023.[2] Evidence relevant to this appeal is summarized below.

1.    A.N.'s Testimony

A.N. testified that when she was around four years old, Graves became romantically involved with her mother. Graves began living with A.N.'s family shortly thereafter in a house in Longview, Washington. Graves later married A.N.'s mother.

A.N. explained that when she was five or six years old, she shared a room with her younger sister. One evening, A.N. and her sister got into an argument, so Graves told A.N. to sleep in the living room.

---

nor his challenges to his community custody conditions. The parties may raise their arguments on the community custody conditions at the resentencing hearing on remand.

[2] Graves was first tried in October 2022. However, before opening statements, the trial court declared a mistrial due to an attorney's illness. Graves' second trial began in February 2023. At the conclusion of the second trial, the jury failed to reach a verdict. Therefore, the trial court declared a mistrial.

Before falling asleep, A.N. was lying on the couch watching a movie, and Graves sat on the other side of the couch by A.N.'s feet. As A.N. was falling asleep, Graves' hand began touching her calf and moved up her leg. A.N. felt Graves move on top of her and remove her pants and underwear. A.N. then felt his penis penetrate her vagina. A.N. did not realize what had happened until a year or more later when she started learning more about sex. After she realized what had happened, A.N. did not tell anyone because she did not want to ruin her mother's relationship with Graves. Over the years, A.N. tried telling her mother and her brother about what Graves did, but she was unsuccessful.

2.    Ron N.'s Testimony

Ron N. testified about his relationship with Graves, his observations of his grandchildren, and A.N.'s disclosure. Ron N. explained that he did not have an amicable relationship with Graves. Ron N. characterized the first time he met Graves as "a confrontation; it wasn't really a meeting." 3 Verbatim Rep. of Proc. (VRP) (July 19, 2023) at 1339. Ron N. further described their interactions over the years, explaining:

> Well . . . it got to the point where I just wouldn't . . . drop the kids off because they were so afraid of him. And I had let [A.N.] off, and she [would] run to her window and face the road, just screaming if he was the only one there. So, I got to the point where I just would not drop them off there 'cause I feared for their safety, you know, 'cause they were always afraid, you know? It's just—so, I says, [sic] okay, it was a meeting point, uh with . . . her mother . . . down at Walmart. And that's the only place we'd meet because there was a confrontation almost every time.

3 VRP (July 19, 2023) at 1341.

Ron N. also explained that when A.N. was young, she was a talkative, happy-go-lucky child. Ron N. testified that he noticed a change in A.N.'s behavior after Graves became part of her life. Describing the changes in A.N.'s and her brother's demeanor, Ron N. explained:

[S]he stopped talking. [Her brother] started crying all the time when he came over. We—we only got to see them every other week, so for the weekend. And . . . [A.N.] would just—she'd just go within herself, and she wouldn't say anything. [Her brother] would constantly cry to . . . his grandmother, my wife. . . . [I]t was almost every time, how bad he was treated in the household that he was living in.

3 VRP (July 19, 2023) at 1342.

Ron N. also testified about A.N.'s disclosure. Ron N. stated that A.N. spent Thanksgiving with his family in 2020. A.N. was crying and told him that Graves had done something to her. The next day, Ron N. contacted the police.

On cross-examination, Ron N. testified that he did not witness the rape. Defense counsel asked Ron N. whether he loved his granddaughter, A.N., and whether he would do anything to protect her. Ron N. agreed that he loved A.N. and would do anything to protect her.

3.      Detective Lee's Testimony

Detective Troy Lee testified that as part of his investigation, he submitted a referral for the Child Justice and Advocacy Center to interview A.N. Detective Lee explained that he observed the interview and noticed that A.N. seemed uncomfortable and fearful when discussing the incident.

Following that interview, Detective Lee contacted Graves at his residence. The State asked about Graves' appearance and demeanor when Detective Lee contacted him. Graves objected based on relevance, but the trial court overruled the objection. Detective Lee subsequently testified that Graves opened the door "wearing nothing but a towel around his waist." 3 VRP (July 19, 2023) at 1362.

4.      Graves' Testimony

Graves testified that he did not rape A.N.  On cross-examination, the State asked Graves about his police interview.  Graves explained that during his interview, he stated that he may have accidentally touched A.N.'s "private areas" in the past because the family moved into a small trailer after living in their Longview home.  3 VRP (July 20, 2023) at 1412.  Graves also testified that he previously told Detective Lee that he believed A.N. was lying about rape because he took A.N.'s phone and internet away.

B.      CONCLUSION OF TRIAL

During closing arguments, Graves' counsel argued that A.N. lied about Graves touching her so that she would not have to live in the trailer with Graves and the blended family; A.N. would be able to live with her grandfather and have her own room.  Defense counsel also argued that most of the State's witnesses merely parroted back A.N.'s story—they did not witness the rape. Defense counsel specifically discussed Ron N.'s credibility and argued:

> He is grandpa, he is papa bear, and absolutely he should believe her.  That is his job.  He hears about something that may have happened to his little girl, and he's going to do everything he can.  You can see the anger bleeding out of the stand, and that is appropriate, justified anger.  But he doesn't know.  His anger and his understanding of what happened, that's not evidence that this actually happened. All that does is go back to [A.N.].  There is no corroboration.

3 VRP (July 20, 2023) at 1447.

At the conclusion of trial, the jury found Graves guilty of first degree rape of a child.

C.      SENTENCING

Graves appeared at his sentencing hearing from an in-court holding cell.  The trial court sentenced Graves to an indeterminate sentence of 160 months to life.  The trial court explained

that the sentence was appropriate based on Graves' prior incidents of similar behavior and his pattern of failing to take responsibility.

Graves appeals.

ANALYSIS

Graves argues that his conviction should be reversed because he received ineffective assistance of counsel when defense counsel failed to object to irrelevant evidence or request a limiting instruction for evidence of other alleged bad acts. Graves also argues that the trial court erred by admitting irrelevant evidence that Graves was wearing only a towel when contacted by law enforcement. Graves further argues that the trial court violated his due process rights when he appeared at sentencing from an in-court holding cell.

We hold that Graves did not receive ineffective assistance of counsel during trial. Further, although the trial court erred in admitting irrelevant evidence that Graves was wearing only a towel when contacted by law enforcement, this error was harmless. Finally, Graves' appearance from an in-court holding cell at sentencing without the trial court first conducting an individualized inquiry was a manifest error affecting a constitutional right and that the error was not harmless. Accordingly, we affirm Graves' conviction, but we reverse Graves' sentence and remand to the trial court for resentencing.

A.    INEFFECTIVE ASSISTANCE DURING TRIAL

Graves argues that his conviction should be reversed because his defense counsel was ineffective by failing to object to irrelevant evidence or request a limiting instruction for evidence of other alleged bad acts. We disagree.

1.      Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantees the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance of counsel claim, the appellant must show that defense counsel's performance was deficient and that the deficient representation prejudiced the defendant. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024); *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"To establish deficient performance, a defendant must show that defense counsel's actions 'fell below an objective standard of reasonableness based on consideration of all the circumstances.'" *Bertrand*, 3 Wn.3d at 130 (quoting *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). But counsel's performance is not deficient when the conduct can be characterized as legitimate strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). We strongly presume that defense counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). "[A] criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Id.* (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). A criminal defendant "'must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *Vazquez*, 198 Wn.2d at 248 (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)).

To show prejudice, the appellant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862). A reasonable probability is that which is "'sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

"If a defendant centers their claim of ineffective assistance of counsel on their attorney's failure to object, then 'the defendant must show that the objection would likely have succeeded.'" *Vazquez*, 198 Wn.2d at 248 (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541, *review denied*, 193 Wn.2d 1038 (2019)). It is a legitimate trial tactic to forgo an objection to avoid highlighting certain evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

"Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013).

2.     No Deficient Performance Shown

Graves argues that it was deficient performance for his defense counsel to not object to Ron N.'s testimony. Specifically, Graves contends that defense counsel should have objected to the following testimony:

> "Well . . . it got to the point where I just wouldn't . . . drop the kids off because they were so afraid of him. And I had let [A.N.] off, and she [would] run to her window and face the road, just screaming if he was the only one there. So, I got to the point

> where I just would not drop them off there 'cause I feared for their safety, you know, 'cause they were always afraid, you know? It's just—so, I says, [sic] okay, it was a meeting point, uh with . . . her mother . . . down at Walmart. And that's the only place we'd meet because there was a confrontation almost every time."

Br. of Appellant at 13 (some alterations in original) (quoting 3 VRP (July 19, 2023) at 1341).

Graves also contends that defense counsel should have objected to Ron N.'s testimony discussing his observations of changes in A.N.'s demeanor:

> "[S]he stopped talking. [Her brother] started crying all the time when he came over. We—we only got to see them every other week, so for the weekend. And . . . [A.N.] would just—she'd just go within herself, and she wouldn't say anything. [Her brother] would constantly cry to . . . his grandmother, my wife. . . . [I]t was almost every time, how bad he was treated in the household that he was living in."

Br. of Appellant at 14 (some alterations in original) (quoting 3 VRP (July 19, 2023) at 1342).

Graves asserts that defense counsel was ineffective by failing to object to this irrelevant evidence.

Generally, only relevant evidence is admissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "'The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible.'" *State v. Briejer*, 172 Wn. App. 209, 225, 289 P.3d 698 (2012) (quoting *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002)).

Here, had defense counsel objected to the challenged testimony as irrelevant, the objection likely would have failed. The first challenged excerpt discussed A.N.'s reaction to returning to her parents' household. That testimony is relevant because it has the tendency to make A.N.'s allegation of sexual abuse more probable by showing her reluctance to return to the household where the abuse occurred. Similarly, the second excerpt, which discussed A.N.'s change in

demeanor, is relevant because it too has the tendency to make the abuse more probable by showing that A.N. began crying and growing more detached after Graves became a part of her life. Because the challenged testimony has a tendency to make the allegation of abuse more probable, an objection by defense counsel to this testimony on relevance grounds would likely not have succeeded. Therefore, Graves' ineffective assistance of counsel challenge on this ground fails.

Graves alternatively argues that even if the evidence was admissible, he was entitled to a limiting instruction pursuant to ER 404(b). We disagree.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). "To admit evidence of a person's prior misconduct, 'the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.'" *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

Here, the challenged testimony merely presents Ron N.'s observations of his grandchildren and family dynamics. And while the challenged testimony discusses specific conduct by A.N. and her brother, the challenged testimony does not reference any specific bad act or conduct by Graves. Also, Graves does not explain how the challenged testimony is ER 404(b) evidence of Graves' prior bad acts; rather, Graves merely makes the conclusory statement that the challenged

statements "fall[] under the purview of . . . ER 404(b)." Br. of Appellant at 18. Thus, because Graves fails to show that the challenged testimony was ER 404(b) evidence, he necessarily fails to show that he was entitled to a limiting instruction under ER 404(b). Accordingly, defense counsel was not deficient for failing to request a limiting instruction, and Graves' ineffective assistance of counsel claim fails.

B.     ADMISSIBILITY OF EVIDENCE

Graves argues that the trial court erred by admitting evidence that Graves was wearing only a towel when contacted by police because the evidence was irrelevant.[3] At trial, Graves objected to the question eliciting this testimony on relevance grounds. While we agree that the trial court erred in admitting irrelevant evidence, the error was harmless.

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Restvedt*, 26 Wn. App. 2d 102, 122, 527 P.3d 171 (2023). "'A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Id.* at 122-23 (internal quotation marks omitted) (quoting *State v. Arndt*, 194 Wn.2d 784, 799, 453 P.3d 696 (2019), *cert. denied*, 142 S. Ct. 726 (2021)). If the trial court abused its discretion, then we review the error for prejudice to determine whether the error was harmless. *In re Dependency of A.C.*, 1 Wn.3d 186, 193, 525 P.3d 177 (2023).

---

[3] The State contends that this issue was not preserved for appeal. However, Graves objected to the question eliciting this testimony on relevance grounds. Therefore, we address whether the trial court abused its discretion by admitting irrelevant evidence. To the extent Graves attempts to argue that the evidence was inadmissible under ER 403, this issue was not preserved for appeal under RAP 2.5(a).

Generally, only relevant evidence is admissible. ER 402; *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 729, 315 P.3d 1143 (2013), *review denied*, 180 Wn.2d 1011 (2014). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Here, the trial court admitted Detective Lee's testimony that when he first contacted Graves at his residence, Graves answered the door wearing only a towel. This evidence is not relevant because the fact that Graves wore a towel to answer the door is not probative on the issue of whether Graves raped A.N. That Graves wore a towel to answer the door does not make any fact consequential to the rape charge more or less probable, and therefore, the evidence is irrelevant. Thus, the trial court abused its discretion by admitting irrelevant evidence.

Because we find that the trial court abused its discretion, we next consider whether the error was harmless. *A.C.*, 1 Wn.3d at 193. Under the nonconstitutional harmless error standard, Graves is not entitled to a new trial unless he shows that "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Wasuge*, ___ Wn.3d ___, 582 P.3d 320, 327 (2026) (internal quotation marks omitted) (quoting *State v. Goggin*, 185 Wn. App. 59, 69, 339 P.3d 983 (2014), *review denied*, 182 Wn.2d 1027 (2015)). "'The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.'" *Id.* (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)).

Here, evidence that Graves opened the door in a towel when contacted by the police is of minor significance compared to the evidence as a whole. A.N.'s testimony described the rape in

detail, and her grandfather, Ron N., testified as to A.N.'s changed demeanor and her disclosure. Further, Detective Lee testified as to his observations of A.N.'s disclosure during the interview. Additionally, the evidence that Graves answered the door in a towel was a standalone comment; the State did not revisit this evidence during closing arguments. Because this testimony stood in isolation surrounded by strong evidence supporting Graves' conviction, the evidence that Graves opened the door while wearing a towel is of minor significance compared to the evidence as a whole. Accordingly, absent the admission of such evidence, it is not reasonably probable that the outcome would have been different. Thus, although the trial court admitted irrelevant evidence, this error was harmless.

## C.     APPEARING FROM AN IN-COURT HOLDING CELL

Graves argues that the trial court violated his due process rights when he was required to appear at sentencing from an in-court holding cell. We agree.

Graves also requests that we remand for resentencing to a different judge who has not already seen Graves unjustifiably restrained. We decline such a request.

This court may "refuse to review any claim of error [that] was not raised in the trial court." RAP 2.5(a). But a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). To raise a manifest error affecting a constitutional right on appeal, "'the appellant must identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights.'" *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (alteration in original) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). A constitutional error is manifest if the defendant shows actual prejudice—a "'plausible showing by the [appellant] that the asserted error had practical and identifiable

consequences'" in the proceeding. *Id.* (alteration in original) (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 99).

A manifest error affecting a constitutional right may be harmless. *Id.* The State has the burden of showing a constitutional error is harmless beyond a reasonable doubt. *Id.*

1.      Manifest Error Affecting a Constitutional Right

In *State v. Luthi*, 3 Wn.3d 249, 256, 549 P.3d 712 (2024), our Supreme Court held that "[a] defendant's right to appear in court free from unjustified restraints is well established as a matter of federal and state due process law." A defendant "'is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances'" to protect the right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. *State v. Jackson*, 195 Wn.2d 841, 852, 467 P.3d 97 (2020) (quoting *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (plurality opinion), *cert. denied*, 528 U.S. 922 (1999)).

Our Supreme Court explained that "the in-court holding cell at the Cowlitz County Jail courtroom is a restraint on defendants that undermines the presumption of innocence, the ability to consult with counsel, and the dignity of the proceedings. . . . [T]hese concerns do not vanish when a jury is not present." *Luthi*, 3 Wn.3d at 261. Recognizing that "a defendant is entitled to due process at every courtroom appearance, not just jury trials," our Supreme Court held that the practice of requiring defendants to appear from an in-court holding cell violates due process unless the trial court makes an "individualized finding that such restraint is necessary for courtroom security reasons." *Id.* at 263. Accordingly, our Supreme Court in *Luthi* held that the trial court's

14

failure to conduct an individualized inquiry to determine whether the holding cell was necessary constituted a constitutional error. *Id.*

Here, the trial court did not conduct an individualized inquiry into whether the in-court holding cell was necessary; thus, Graves' due process rights were violated. *Id.*; *Jackson*, 195 Wn.2d at 852. Nothing in the record suggests that Graves presented a danger in the courtroom, which is a secure facility. *See Luthi*, 3 Wn.3d at 263 n.7 ("'[I]t is difficult to see how the extreme prejudice created by the in-court holding cell could be outweighed by security concerns, given that (1) the courtroom is already located within a secure jail facility and (2) courts 'must consider less restrictive alternatives before imposing physical restraints.'" (quoting *Finch*, 137 Wn.2d at 850)). While *Luthi* had not yet been decided at the time of Graves' sentencing, then-existing case law was sufficient to alert the trial court of its obligation to conduct an individualized inquiry of Graves' particular security risk before requiring Graves to appear at his sentencing in the in-court holding cell. *See Jackson*, 195 Wn.2d at 852.

Further, although Graves was sentenced within the standard range, the trial court imposed a sentence at the top of the standard range—160 months to life. As our Supreme Court recognized in *Luthi*, the in-court holding cell created "extreme prejudice." 3 Wn.3d at 263 n.7. Given the extreme prejudice resulting from use of the in-court holding cell and Graves' high-end indeterminate sentence, we hold that there is a plausible showing of a practical and identifiable consequence arising from the violation of Graves' due process rights. Therefore, Graves has suffered a manifest error affecting a constitutional right. We next consider whether this error was harmless.

2.      Harmless Error

The State argues that any error was harmless beyond a reasonable doubt because the trial court followed the presentence investigation recommendation and cited Graves' history of similar behavior and a failure to take responsibility. We disagree.

We presume that a constitutional error prejudiced the defendant. *Jackson*, 195 Wn.2d at 856. "[T]he State bears the burden to prove beyond a reasonable doubt that the constitutional violation was harmless." *Id.*

The State argues that any error was harmless because the trial court reasoned that Graves' sentence was "based on Graves' prior history of doing the same thing and lack of taking responsibility for his actions. Both are sound reasons the court gave for giving the standard range sentence." Br. of Resp't at 35.

Although the trial court provided "sound reasons" for its high-end sentence, the State has not met its burden of showing beyond a reasonable doubt that the due process violation was harmless. Br. of Resp't at 35. Given the presumption that the constitutional error prejudiced Graves, the State cannot show that the error was harmless by merely stating that Graves was sentenced within the standard range and highlighting the trial court's reasoning. Accordingly, we conclude that the error was not harmless beyond a reasonable doubt.

3.      Resentencing Judge

Graves argues he should be resentenced by a different judge. Graves contends that "[t]he original judge has already seen Graves from the in-court holding cell" so "[i]t would be unreasonable to expect anyone to be able to disregard the subtle ways that can unconsciously affect decision-making." Br. of Appellant at 41.

16

A party may seek reassignment for the first time on appeal when "the trial judge 'will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue.'" *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017) (quoting *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014)). Reassignment on appeal "is available only in limited circumstances; even where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally not available as an appellate remedy if an appellate opinion offers sufficient guidance to effectively limit trial court discretion on remand." *Id.*

Here, we do not agree that it is "unreasonable to expect anyone [who has already seen Graves in the in-court holding cell] to be able to disregard the subtle ways that can unconsciously affect decision-making." Br. of Appellant at 41. There is no evidence nor any indication in the record that because the trial judge has already seen Graves in an in-court holding cell that the judge has prejudged the issue or that their impartiality might reasonably be questioned. Accordingly, we decline Graves' request to disqualify the same judge from presiding over Graves' resentencing.

CONCLUSION

We affirm Graves' conviction. However, because Graves' due process rights were violated when he appeared at his sentencing hearing from an in-court holding cell and the error was not harmless, we reverse Graves' sentence and remand to the trial court for resentencing.

No. 58816-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Veljacic, C.J.